OPINION
{¶ 1} Defendant-appellant Sero D. Askew appeals the June 28, 2004 Judgment Entry entered by the Stark County Court of Common Pleas, which overruled his motions to suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On April 26, 2004, the Stark County Grand Jury indicted appellant on two counts of trafficking in cocaine, in violation of R.C.2925.03(A)(2)(C)(4)(f); one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2)(C)(4)(g), with a major drug offender specification; two counts of possession of cocaine, in violation of R.C.2925.11(A)(C)(4)(e); and one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(f), with a major drug offender specification. Appellant entered a plea of not guilty to the indictment at his arraignment on April 30, 2004. During pre-trial proceedings, appellant filed a motion to suppress evidence and motion to suppress statements. The trial court conducted a hearing on the motions on June 4, 2004, and June, 11, 2004.
 {¶ 3} Special Agent Harry Tideswell of the U.S. Department of Justice Drug Enforcement Agency ("DEA") testified the DEA had received information appellant was a large-scale drug distributor and was residing in North Canton, Ohio. The DEA also had information the Las Vegas, Nevada DEA had seized $70,000 from appellant, which he had accumulated through illegal activities, in January, 2004. Based upon this information, local law enforcement agencies, the DEA, and the FBI began investigating appellant in March, 2004. The DEA further knew appellant was driving a rental vehicle with out of state license plates as well as a burgundy suburban with Minnesota license plates.
 {¶ 4} On March 9, 2004, Agent Tideswell learned a confidential informant had set up a drug transaction with appellant during which appellant would supply the confidential informant with 4½ oz. of crack cocaine. Law enforcement officials were provided with information relative to the location of the transaction, the route appellant would travel, and the type of vehicle appellant would be driving. Agent Tideswell and other officers set up surveillance in the area and planned a traffic stop of appellant.
 {¶ 5} Darrell Pierson of the Canton Police Department was on routine patrol in a marked police cruiser when undercover agents advised him they needed a marked car in the area of the 1300 block of East Tuscarawas Street in the City of Canton. The undercover agent instructed Pierson to be on the lookout for a maroon, 4-door vehicle with Nevada license plates. Shortly thereafter, Pierson observed the vehicle and proceeded to follow it. The officer paced the vehicle and estimated its speed at 52 mph in a 35 mph zone. Pierson contacted the agents and effectuated a traffic stop.
 {¶ 6} Upon approaching the vehicle, Officer Pierson asked appellant for his driver's license and registration. Appellant began moving around inside the vehicle in an attempt to reach something, which later turned out to be his cell phone. For officer safety, Officer Pierson instructed appellant to exit the vehicle. Appellant refused to comply. Det. Bryan Allen with the FBI taskforce arrived as backup and the two officers physically removed appellant from the vehicle. Appellant became combative and the officers took him to the ground. Officer Pierson handcuffed appellant and conducted a pat-down search. During the pat-down search, the officer felt a large lump in appellant's right front pocket, which was subsequently determined to be 4½ oz of crack cocaine.
 {¶ 7} Appellant was transported to the Stark County FBI office, where he was advised of his Miranda rights. Other than providing officers with "pedigree information," i.e., name, date of birth, prior arrests, appellant refused to talk to the agents. As a result of his refusal to cooperate with the agents, appellant was taken to the Stark County Jail.
 {¶ 8} Later that evening, agents proceeded to a residence located at 1207 Strawberry Court in North Canton, Ohio. Tomeca Neal, appellant's girlfriend, leased the residence, which she shared with appellant and their daughter. The agents observed a burgundy suburban with Minnesota license plates parked in the driveway. Appellant had previously told the agents he no longer had the vehicle.
 {¶ 9} Agent Tideswell and two other officers knocked on the door of the residence. Agent Tideswell explained to Neal he and the other two agents wanted to search the residence. Neal allowed the agents to enter the residence and inquired as to the perimeters of the search. The agents informed her they were looking for drugs, weapons, and large sums of money which they believed belonged to appellant.
 {¶ 10} Agent Tideswell entered the kitchen, sat down and began to fill out the consent to search forms. While in the kitchen, he noticed a digital scale and a large amount of cash in plain view. Neal subsequently signed the consent forms which permitted the agents to search the residence as well as the suburban parked in the driveway. Neal advised Agent Tideswell the digital scale and the cash belonged to appellant. During the search, the agents discovered a large amount of powder and crack cocaine.
 {¶ 11} The following day, March 10, 2004, Agents Tideswell, James Monigold of the Stark County Metro Narcotics Unit, and Mark McMurty of the FBI spoke with appellant at the Stark County Jail. They informed appellant they had searched appellant's residence and found a large amount of cocaine and money. Appellant signed a waiver of rights form and agreed to give a statement.
 {¶ 12} Based upon the evidence presented at the suppression hearings, the trial court found appellant's waiver of his rights was knowingly, voluntarily and thoughtfully given, and the agents did not unlawfully obtain the waiver from him. The trial court memorialized its decision via Judgment Entry filed June 28, 2004.
 {¶ 13} Thereafter, on August 4, 2004, appellant appeared before the trial court and entered a plea of no contest to the indictment. The trial court found appellant guilty of all the charges contained in the indictment and proceeded to sentencing. The trial court imposed an aggregate term of imprisonment of fifteen years, suspended appellant's driver's license for five years, and fined him $10,000.
 {¶ 14} It is from this conviction appellant appeals, raising the following assignments of error:
"I. The trial court erred when it failed to suppress the evidence FOUND in a search of the appellant mr. sero askew's home which was the product of an illegal search of the telephone numbers contained in his cell phones [sic] memory as the search was a violation of mr. askew's right to privacy guaranteed under the fourth amendment to the united states constitution and article I section 14 of the ohio state constitution.
"II. the trial court erred when it failed to suppress the evidence found in a search of the appellant mr. sero askew as the search was the product of an illegal stop of his vehicle which was not a traffic stop, but rather a warrantless arrest for which probable cause was lacking a violation of mr. askew's right to privacy guaranteed under the fourth
amendment to the united states constitution and article I section 14 of the ohio state constitution [sic].
"III. The trial court erred when it failed to suppress the evidence found in a search of the appellant mr. sero askew as the search was the product of him being removed from his vehicle by force, which was a warrantless arrest for which probable cause was lacking a violation of mr. askew's right to privacy guaranteed under the fourth amendment to the united states constitution and article i section 14 of the ohio state constitution.
"IV. The trial court erred when it failed to suppress the evidence found in a search of the appellant Mr. Sero askew's home as the search was conducted without a warrant and no voluntary consent for the search was given, which is a violation of mr. askew's right to privacy guaranteed under the fourth amendment to the united states constitution and article i section 14 of the ohio state constitution.
"V. The trial court erred when it failed to suppress the statements made by mr[.] askew as they were not freely and voluntarily given which is a violation of Mr. Askew's right to silence guaranteed under the fifth
amendment to the united states constitution and the ohio state constitution."
 I {¶ 15} In his first assignment of error, appellant argues the trial court erred in failing to suppress the evidence found during the search of his residence. Specifically, appellant claims the police violated his constitutional right to privacy by illegally searching information contained in the memory of his cell phone, information which ultimately led them to the residence at 1207 Strawberry Court. Appellant argues his cell phone is a personal effect in which he had a legitimate expectation of privacy.
 {¶ 16} Although the instant assignment of error raises an interesting legal issue, we need not address it. Appellant did not raise this issue in his motion to suppress. The only issue raised in the motion was whether Tomeca Neal's consent to search the residence was voluntarily given. Having failed to raise the cell phone issue to the trial court, appellant has waived this issue on appeal. Crim. R. 12; State v. Peagler
(1996), 76 Ohio St.3d 496, 501, 1996-Ohio-73.
 {¶ 17} Appellant's first assignment of error is overruled.
 II {¶ 18} In his second assignment of error, appellant claims the trial court erred in failing to suppress the evidence found during the search of his person as the search was the product of an illegal stop of his vehicle. Specifically, appellant maintains the police did not have probable cause or a warrant to stop his vehicle. Appellant submits "the stop of [his] vehicle was a result of a `staged traffic stop' designed simply to arrest [him]." Brief of Appellant at 12.
 {¶ 19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: State v. Fanning(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486;State v. Guysinger (1993), 86 Ohio App.3d 592. Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627; and State v. Guysinger(1993), 86 Ohio App.3d 592. As the United States Supreme Court held inOrnelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 20} In this case, we are concerned with whether the trial court correctly decided the ultimate issue raised in the motion to suppress. Therefore, we must independently determine whether the facts of this case warranted the stop of appellant's vehicle.
 {¶ 21} In Dayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, the Ohio Supreme Court stated: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."
 {¶ 22} In State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, unreported, this Court held any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. "The severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Weimaster
(Dec. 21, 1999), Richland App. No. 99CA36, unreported. Rather, `* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *'" Id. at 5, citing McCormick at 10, citing Erickson at 11-12. We herein apply a similar analysis and find there was sufficient reasonable, articulable suspicion of a speeding violation to justify a stop of the motor vehicle.
 {¶ 23} Officer Darrell Pierson of the Canton Police Department testified he was dispatched to the area of the 1300 block of E. Tuscarawas Street and advised to be on the lookout for a maroon 4-door vehicle with Nevada license plates. Pierson observed the vehicle and commenced following it. While following the vehicle, Pierson estimated its speed at 52 m.p.h. in a 35 m.p.h. zone. Pierson effectuated the traffic stop due to a speeding violation. We find the trooper's stop of appellant's vehicle was constitutionally valid. Accordingly, we find the trial court did not err in overruling appellant's motion to suppress.
 {¶ 24} Appellant's second assignment of error is overruled.
 III {¶ 25} In his third assignment of error, appellant argues the trial court erred in failing to suppress evidence found during the search of appellant's person as the search was the product of a warrantless arrest.
 {¶ 26} Appellant failed to raise this issue in his motion to suppress. Accordingly, we find he has waived the issue on appeal. Crim. R. 12; Peagler, supra.
 {¶ 27} Appellant's third assignment of error is overruled.
 IV {¶ 28} In his fourth assignment of error, appellant contends the trial court erred in failing to suppress the evidence found during the search of appellant's residence. Specifically, appellant argues the search was conducted without a warrant and Tomeca Neal's consent was not voluntarily given.
 {¶ 29} Initially, we find appellant does not have standing to challenge the search of the residence at Strawberry Court. The residence was leased to Tomeca Neal.
 {¶ 30} Assuming, arguendo, appellant had standing to challenge the search, we find the trial court's finding Neal's consent to the search was voluntarily given is not against the manifest weight of the evidence. Agent Tideswell testified he and two other officers went to the Strawberry Court residence, and knocked on the door. After a few moments, Neal answered the door. Tideswell showed his badge and credentials to Neal and explained they were there because of appellant. Neal allowed the officers to enter the residence. Tideswell informed Neal they did not intend to arrest her, but were looking for drugs, weapons and money belonging to appellant, and noted their belief the residence was appellant's drug storage location. While in the kitchen filling out the consent to search form, Tideswell observed in plain view a digital scale and a large amount of cash. Neal advised Tideswell the items belonged to appellant. Neal signed the consent to search forms. She remained at the residence while the officers searched it and was accommodating. Neal showed the officers where to search for contraband.
 {¶ 31} In contrast, Neal testified she did not want to let the officers into the house and tried to push the door closed. She stated one of the agents pushed the door open, damaging the wall. Neal recalled instructing the officers to leave and asking if they had a warrant. According to Neal, the officers threatened to take her and anyone else in the residence to jail if they had to obtain a warrant.
 {¶ 32} As the trial court is in the best position to assess the credibility of the witnesses, an appellate court must defer to a trial court's decision. State v. Jamison (1990), 49 Ohio St.3d 182. The trial court specifically found Neal to be neither believable nor credible. On the contrary, the trial court specifically found Agent Tideswell to be credible and sincere. The trial court as the trier-of-fact was free to accept or reject any or all the testimony of the witnesses. We find the trial court's finding Neal's consent was voluntary is not against the manifest weight of the evidence.
 {¶ 33} Appellant's fourth assignment of error is overruled.
 V {¶ 34} In his final assignment of error, appellant asserts the trial court erred in failing to suppress the statement he made to police as such was not freely and voluntarily given.
 {¶ 35} In this assignment of error, appellant challenges the trial court's finding his waiver of his Miranda rights was knowingly, voluntarily and thoughtfully given. As such, this Court must determine whether this finding is supported by the weight of the evidence.
 {¶ 36} Agent Tideswell testified he and two other officers proceeded to the Stark County Jail to speak with appellant after they had searched the Strawberry Court residence. They informed appellant they had searched appellant's residence and found a large amount of cocaine and money. The officers read appellant his Miranda rights. Appellant signed a waiver of rights form and agreed to give a statement. Appellant, on the other hand, testified he was coerced into giving the statement because the officers threatened to make his children orphans and prosecute Tomeca Neal for conspiracy to distribute crack cocaine. Nonetheless, appellant testified he signed the wavier and understood the rights that had been read to him. The trial court specifically found appellant's claims of coercion were not credible. As stated supra, the trial court is in the best position to weigh the evidence and assess the credibility of the witnesses. We find the trial court's finding appellant's waiver was voluntary is not against the manifest weight of the evidence.
 {¶ 37} Appellant's fifth assignment of error is overruled.
 {¶ 38} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Boggins, P.J. and Gwin, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.