[Cite as *State v. Lewis*, 2020-Ohio-4633.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2019-A-0077** |
| - vs - | : | |
| ORLANDO L. LEWIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court Case No. 2018 TRD 01255.

Judgment: Affirmed.


*Michael Franklin,* Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, Ohio 44004 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, Ohio 44258 (For Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1}   Appellant, Orlando L. Lewis aka Orlando Lamar Lewis Bradley ("Mr. Lewis"), brings this appeal after a jury found him guilty of driving under suspension under R.C. 4510.11, and the trial court found him guilty of violations of the city's "display of lighted lights" and "speed" ordinances.

{¶2}   Mr. Lewis raises two assignments of error, arguing that (1) the "evidence was insufficient to support the jury's verdict as to speed, lights required, and driving under suspension"; and (2) his conviction is against the manifest weight of the evidence

"because the jury substituted opinion and speculation for factual evidence in finding him guilty." Most notably, he argues that because he has never had a driver's license, he could not be convicted of the charge of driving under a driver's license suspension.

{¶3} Mr. Lewis's assignments of error are without merit. The state introduced the uncontradicted testimony of the officer who observed the violations and conducted the investigation as to Mr. Lewis's driving record of a 12-point suspension and nine other open suspensions, which was more than sufficient evidence to support the jury's verdict on the only issue submitted for jury determination – the driving under suspension charge.

{¶4} Mr. Lewis' reasoning, while creative, ignores the plain language of the applicable statutory law. For purposes of a driving under suspension charge, the definition of "suspend" and "suspension" found in R.C. 4510.01(H) includes the "permanent or temporary withdrawal *of the privilege to obtain a license*, permit, or privilege * * * for the period of the suspension." (Emphasis added.)

{¶5} The officer's testimony was also sufficient to support the trial court's finding on the display of lighted lights and speeding charges. Further, the manifest weight of the evidence supports his conviction. The judgment of the Ashtabula Municipal Court is affirmed.

### Substantive and Procedural History

{¶6} In April of 2018, Mr. Lewis was charged with speed in violation of Ashtabula Codified Ordinance 333.02(d)(2), display of lighted lights in violation of Ashtabula Codified Ordinance 337.13, both minor misdemeanors, and driving under suspension in violation of R.C. 4510.11(A), a first-degree misdemeanor.

2

{¶7} Mr. Lewis pleaded not guilty to the charges. The case proceeded to trial, with a jury determining the charge of driving under suspension and the trial court determining the minor misdemeanor charges of speed and display of lighted lights.

{¶8} The state presented the testimony of Lieutenant Rodney Blaney ("Lt. Blaney") and introduced Mr. Lewis's LEADS ("Law Enforcement Automated Data System") report as evidence. The defense introduced the traffic citation from the incident as evidence.

{¶9} Lt. Blaney testified that while on patrol on the night of the incident, at approximately 1:30 am, his attention was drawn to a gray Nissan Rogue, which was traveling at a high speed on Lake Avenue at the intersection of West 9th Street, headed northbound in the city of Ashtabula. He visually estimated the vehicle to be traveling "at least twice the speed" or approximately 50 miles per hour ("mph") in a posted 25-mph zone.

{¶10} At that point, Lt. Blaney, who was parked, pulled out in pursuit in an attempt to pace the vehicle and initiate a traffic stop. He was unable to pace the vehicle. He explained to the jury that pacing means "[s]imply getting behind the car with my patrol car. And I look at the speed that I'm traveling and see what speed I'm at, and I look at the vehicle that's in front of me and I take in consideration the gap between us. If that vehicle is, if the gap between us is getting smaller then that means that I'm traveling at a faster speed than the vehicle in front of me. If the gap is opening up then the vehicle is driving at a faster speed than I am. And if the gap remains the same then we're at the same speed."

{¶11} By the time Lt. Blaney pulled out, the vehicle was already a few blocks north, at the intersection of West 6th Street, westbound towards Ohio Avenue. He observed the vehicle make a "hard" left turn onto West 6th. By the time he reached that intersection, the vehicle was already on Ohio Avenue, with its brake lights on as it slowed down for a stop sign. Based upon his training and experience, he opined the vehicle was traveling at a higher rate than the posted speed limit.

{¶12} Rather than pursuing the vehicle, Lt. Blaney drove to the next street, West 5th Street. As he headed westbound on West 5th Street, the vehicle was approaching him eastbound. Lt. Blaney was unable to identify the driver, but he did get a look at the license plate, which he ran through his car computer system. The registered owner was Kayla Potter, an individual with whom he was familiar. He saw the vehicle in his rearview mirror pull over near Jiggy's Bar and turn off its headlights. Lt. Blaney testified that at that time, he suspected the driver was another individual with whom he was also familiar, Mr. Lewis.

{¶13} Instead of approaching the vehicle, Lt. Blaney decided to park and monitor the intersection. After a few minutes, he saw the Nissan Rogue pull back out onto Lake Avenue with its headlights off. It sped up quickly and made a hard right turn into the parking lot of Squire's Donut Shop. The vehicle hit a ramp and pulled behind a brick office building that is just south of Squire's Donut Shop. Within moments, the vehicle appeared on the other side of the brick office building. It still had its headlights off as it sped away southbound on Lake Avenue.

{¶14} Lt. Blaney testified that he pulled out immediately from West 6th Street onto Lake Avenue and began pacing the vehicle from behind "as quickly as he could."

4

{¶15} Lt. Blaney observed that he was traveling at 45 mph and that the gap between his vehicle and that being pursued was staying the same. The vehicle's headlights were still off. At that point, Lt. Blaney activated his overhead emergency lights to initiate a traffic stop just as the vehicles were going through the intersection of Lake Avenue and West 9th Street. The Nissan Rogue turned on its headlights and made a "hard" turn onto West 10th Street.

{¶16} Lt. Blaney called out the traffic stop and asked for additional police officers to respond to the scene. He approached the driver, who had pulled to the side of the road, and Lt. Blaney identified the driver as Mr. Lewis. He asked Mr. Lewis to provide his driver's license, identification, and insurance, and explained the reasons for the stop.

{¶17} Lt. Blaney testified that Mr. Lewis, who was alone in the vehicle, provided him with an Ohio Department of Corrections identification card, which contained his name. Lt. Blaney "explained to him that his driving status was under suspension and also what the speed violation and the lighted lights required violations." Lt. Blaney testified that he had spoken several times with the vehicle's owner and warned her that Mr. Lewis "was not permitted to drive any of her vehicles because his driving status is suspended." He confirmed the suspension through his car computer after his initial contact with Mr. Lewis.

{¶18} Mr. Lewis's LEADS report was then entered into evidence. Lt. Blaney generally explained a LEADS report. He then noted Mr. Lewis's most current suspension is a 12-point suspension and observed that "aside from that he has a total of nine open driving suspensions that do not permit him to obtain a valid driver's license. It does not

5

permit him to drive a motor vehicle in the state of Ohio on a public road, highway, or private property."

{¶19} The LEADS report reflected that Mr. Lewis never had a valid license and only had a temporary identification card that was issued on October 31, 2000 and expired on January 11, 2003.

{¶20} Lt. Blaney testified that he issued Mr. Lewis a citation and released him from the scene. The vehicle was towed because of Mr. Lewis's suspended status.

{¶21} Upon cross-examination, Lt. Blaney testified that he knew Mr. Lewis has never had a driver's license and that he wrote on the citation "Orlando L. Lewis." He explained that Orlando L. Lewis is the name that appears on the law enforcement database and agreed that he identified Mr. Lewis as "Orlando Lamar Lewis Bradley" in his report. He explained that it is protocol for completion of a traffic citation that the officer uses the name and spelling of the name that "coincides with the social security number and date of birth and the specific identifiers" that appear on the computer record.

{¶22} After the witnesses were presented, the defense made a Crim.R. 29 sufficiency of the evidence motion on two grounds, arguing that the citation listed Mr. Lewis' name wrong, and because Mr. Lewis has never had an operator's license, he cannot be convicted of driving under suspension. The court overruled the motion.

{¶23} The jury found Mr. Lewis guilty of driving under suspension, and the trial court found Mr. Lewis guilty of display of lighted lights and speed. The court imposed a $100 fine for the speed charge and a "$0.00" fine for the lights required charge. As for driving under suspension, the court imposed a $500 fine and court costs, as well as 30

days in jail with five days for time served. Subsequently, the court stayed Mr. Lewis's sentence pending this appeal.

{¶24} We sua sponte remanded the case because there was no final appealable order. The judgment entry of conviction and sentence made no guilty finding for driving under suspension. Thus, we remanded for the trial court to clarify Mr. Lewis's conviction and sentence and to issue a new judgment entry, if appropriate. The trial court did so, correcting the conviction and sentencing judgment entry to reflect a conviction on the driving under suspension charge.

{¶25} Mr. Lewis now raises two assignments of error for our review:

{¶26} "[1.] The evidence was insufficient to support the jury's verdict of guilty as to speed, lights required and driving under suspension.

{¶27} "[2.] Appellant's convictions as to speed, lights required and driving under suspension were against the manifest weight of the evidence."

### Sufficiency of the Evidence

{¶28} In his first assignment of the error, Mr. Lewis submits that the evidence was insufficient to support the jury's guilty verdict as to driving under suspension and, presumably, the trial court's guilty verdict as to lights required and speeding charges.

{¶29} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence

7

in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶30} A sufficiency challenge requires this court to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Muncy*, 11th Dist. Ashtabula No. 2011-A-0066, 2012-Ohio-2830, ¶13. This test involves a question of law and does not permit us to weigh the evidence. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

### Display of Lighted Lights Charge

{¶31} Pursuant to Ashtabula Codified Ordinance 337.13(a), "display of lighted lights," "at least two State approved lighted lights shall be displayed conforming to State regulations, one near each side of the front of every motor vehicle, except when such vehicle is parked subject to the regulations governing lights on parked vehicles."

{¶32} Ashtabula Codified Ordinance 337.02(a)(1), "lighted lights; measurement of distances and heights," further provides that "[e]very vehicle, other than a motorized bicycle, operated upon a street or highway shall display lighted lights and illuminating devices as required by this chapter during * * * [t]he time from sunset to sunrise[.]"

{¶33} A review of the evidence and testimony at trial reveals that Lt. Blaney observed Mr. Lewis speeding without headlights on until Lt. Blaney initiated the traffic stop, which occurred at approximately 1:30 am. His testimony, which was uncontroverted and uncontested, is more than sufficient evidence upon which the court could find Mr. Lewis had been driving without his headlights.

### Speeding Charge

{¶34} Mr. Lewis next contends that the state failed to introduce sufficient evidence that he was speeding because Lt. Blaney never established the speed at which he was driving, and further, that Lt. Blaney testified that he only made a visual estimation of his speed.

{¶35} A review of Lt. Blaney's testimony reveals that when he first observed Mr. Lewis speeding, he was only able to obtain a visual estimate. This is one of the reasons he decided not to initiate a traffic stop at that time and instead chose to pursue the vehicle. Lt. Blaney explained the "pacing" technique to the jury. He further testified that he continued his observations of the vehicle until he was able to pursue and pace the vehicle at an equal distance with his speedometer at 45 mph while both he and Mr. Lewis were driving in a 25 mph zone.

{¶36} "Pacing" has been determined to be an acceptable manner for determining a vehicle's speed. *See, e.g., State v. Ratliffe*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶22, citing *State v. Vang*, 12th Dist. Madison No. CA2018-06-017, 2019-Ohio-195, ¶11 (traffic stop was valid where a sergeant "was able to determine [appellant's] speed by pacing [appellant's] car with his own patrol car"); *State v. Pullin*, 5th Dist. Stark No. 2019CA00105, 2020-Ohio-787, ¶17 (estimation of appellant's speed was aided by a mechanical device, i.e., a speedometer).

{¶37} The state introduced sufficient evidence that Mr. Lewis was speeding by Lt. Blaney's uncontroverted and uncontested testimony that he paced Mr. Lewis at a traveling speed of 45 mph in a 25 mph zone.

### *Driving Under Suspension Charge*

9

{¶38} Lastly, Mr. Lewis contends that the state failed to introduce sufficient evidence that he was driving with a suspended license because he has no license to suspend; thus, he argues that his conviction is a "legal fiction." He further argues he could have been charged with driving without an operator's license, but since he was not, there was insufficient evidence for the jury to convict him of driving under suspension of a license he never had.

{¶39} Mr. Lewis was convicted of "driving under suspension or in violation of license restriction" in violation of R.C. 4510.11(A), which states, in relevant part that "no person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under any provision of the Revised Code, other than Chapter 4509. of the Revised Code, or under any applicable law in any other jurisdiction in which the person's license or permit was issued, shall operate any motor vehicle upon the public roads and highways or upon any public or private property used by the public for purposes of vehicular travel or parking within this state during the period of suspension unless the person is granted limited driving privileges and is operating the vehicle in accordance with the terms of the limited driving privileges."

{¶40} "Suspend" or "suspension" means "the permanent or temporary withdrawal, by action of a court or the bureau of motor vehicles, of a driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege for the period of the suspension or the permanent or temporary withdrawal *of the privilege to obtain* a license, permit, or privilege of that type for the period of the suspension." (Emphasis added.) R.C. 4510.01(H).

10

{¶41} Pursuant to R.C. Chapter 4509, which governs financial responsibility for motor vehicles, "'[l]icense' includes any license, permit, *or privilege to operate* a motor vehicle issued under the laws of this state including * * * *[t]he privilege of any person to drive a motor vehicle whether or not such person holds a valid license.*" (Emphasis added.) R.C. 4509.01(C)(2).

{¶42} Mr. Lewis's LEADS report was introduced into evidence at trial, which revealed his "privilege to obtain a license" was suspended by a 12-point suspension and nine other open suspensions. At trial, Mr. Lewis never contested his suspensions; rather, he argued that he could not be charged with driving under suspension because he does not have a license. Mr. Lewis, however, can still be convicted for driving under suspension because his privilege to obtain a license has been suspended instead of a suspension of an issued driver's license.

{¶43} As the Ninth District explained in *State v. Haughawout*, 81 Ohio App.3d 7 (9th Dist.1991), "the General Assembly, at least as part of the financial responsibility law, prohibited the operation of a motor vehicle while a person's privilege to drive is suspended as well as his physical license. While the suspension of a license that has already expired [or never issued] would appear to be a vain act, such a suspension would prevent a license from being renewed until adequate security is provided and as such serves a purpose even when the license has otherwise expired [or never issued]." *Id.* at 8, citing *State v. Green*, 8th Dist. Cuyahoga Nos. 52629 and 52630, 1987 WL 18483 (Oct. 15, 1987); *see State v. Fitzmaurice*, 11th Dist. Lake No. 98-L-99, 1999 WL 1313736, *2 (Dec. 3, 1999) (a person's only way to regain driving privileges is to apply for a new license at a later time).

{¶44} Rather than being a "legal fiction," a privilege to obtain a license can be suspended, and there was uncontroverted evidence by way of the LEADS report and Lt. Blaney's testimony that Mr. Lewis's privilege to obtain a license was, in fact, suspended. That is more than sufficient evidence from which a jury could find Mr. Lewis guilty of driving under suspension.

{¶45} Mr. Lewis's first assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶46} In his second assignment of error, Mr. Lewis submits that his conviction is against the manifest weight of the evidence because the jury "substituted opinion and speculation for factual evidence" in finding him guilty. He contends that Lt. Blaney never established the speed he was driving, that Lt. Blaney simply made a visual estimation of his excessive speed, and that his conviction for driving under suspension is a "legal fiction" because he has never possessed a valid operator's license.

{¶47} The Supreme Court of Ohio explained the criminal manifest-weight-of-the-evidence standard in *State v. Thompkins*, 78 Ohio St.3d 380 (1997). *See State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶25. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at ¶25, citing *Thompkins* at 386. Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.*, citing *Thompkins* at 386-87. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? *Id.* Although there may be sufficient evidence to support a judgment, it

could nevertheless be against the manifest weight of the evidence. *Id.*, citing *Thompkins* at 387. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

{¶48} A manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶58. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Fritts*, 11th Dist. Lake No. 2003-L-026, 2004-Ohio-3690, ¶23, citing *Martin*, *supra*, at 175.

{¶49} Based upon testimony and evidence at trial, we cannot conclude the jury so lost its way or created a manifest miscarriage of justice. The state carried its burden of production as to the sufficiency of the evidence by way of Lt. Blaney's testimony and Mr. Lewis's LEADS report, and the manifest weight of the evidence supports Mr. Lewis's conviction.

{¶50} "It is well-settled that when assessing the credibility of witnesses, '[t]he choice between the credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' * * * Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict."

13

(Citations omitted.)  *State v. Rice*, 11th Dist. Lake Nos. 2018-L-065 & 2018-L-066, 2019-Ohio-1415, ¶84.

{¶51}  Mr. Lewis's second assignment of error is without merit.

{¶52}  The judgment of the Ashtabula Municipal Court is affirmed.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.