[Cite as *State v. Curry*, 2025-Ohio-2702.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| STANLEY T. CURRY | : | Case No. 24 CA A 12 0104 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County
Court of Common Pleas,
Case No. 23 CR I 06 0334

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     July 30, 2025

APPEARANCES:

For Defendant-Appellant                    For Plaintiff-Appellee

April F. Campbell                          Melissa A. Schiffel
6059 Frantz Road, Suite 206                Delaware County Prosecuting Attorney
Dublin, Ohio 43017                         Katheryn L. Munger
                                           Assistant Prosecuting Attorney
                                           145 North Union Street, 3rd Floor
                                           Delaware, Ohio 43015

*Gormley, J.*

**{¶1}** Defendant Stanley Curry argues in this appeal that the trial court should have granted his motion to suppress. In that motion, Curry had questioned the validity of the traffic stop that led to the discovery of guns and illegal drugs in his vehicle. That traffic stop was flawed, Curry says, because a deputy sheriff used the "pacing" method to determine that Curry was speeding and then initiated the traffic stop to investigate that suspected speeding offense. The trial court concluded that the traffic stop was a proper one. We agree.

## Facts and Procedural History

**{¶2}** The facts below are drawn from a transcript of a suppression hearing held in the trial court. Deputies Tyler Picou and Devin Doudna from the Delaware County Sheriff's office both testified at that hearing.

**{¶3}** In the early morning hours of April 14, 2023, Deputies Picou and Doudna were on patrol in the same vehicle. Deputy Picou — who was driving that cruiser — was southbound on State Route 61 and saw Curry's vehicle ahead of him. Deputy Picou followed Curry onto State Route 656, and both deputies then smelled vehicle exhaust that suggested to them that Curry or some other driver on the road had accelerated quickly. Deputy Picou also noticed that the distance between the deputies' cruiser and Curry's vehicle was increasing, and Picou estimated that Curry was traveling above the posted speed limit of 55 miles per hour.

**{¶4}** Because Deputy Picou was following Curry's vehicle, he was unable to measure Curry's speed with radar or a laser device. Instead, Deputy Picou paced Curry's vehicle. (That is, Picou followed Curry's vehicle, maintaining a consistent distance from

that vehicle and synchronizing his own speed to match the speed of Curry's vehicle.) After accelerating to a speed of 94 or 95 mph to shorten the distance between the deputies' cruiser and Curry's vehicle, Deputy Picou was able to maintain a consistent distance behind that vehicle by traveling at what the speedometer on the deputies' cruiser indicated was 85 miles per hour.

{¶5}   Deputy Picou then initiated a traffic stop.  When he and Deputy Doudna approached Curry's vehicle on foot, both deputies smelled the odor of burnt marijuana emanating from it.  During a search of that vehicle, the deputies found two firearms and some suspected illegal drugs.  That discovery led to the filing of the criminal charges at issue in this case.

{¶6}   Before his trial date, Curry filed a motion to suppress, arguing that the stop of his vehicle had been improper.  After holding a hearing on that motion, the trial court denied Curry's motion to suppress.  Curry then entered a no-contest plea to gun and drug charges, and he received a lengthy prison term.

## Law-Enforcement Officers Had a Specific and Articulable Reason to Initiate the Traffic Stop

{¶7}   In his sole assignment of error, Curry argues that his motion to suppress should have been granted because in his view pacing was not a proper way for Deputy Picou to measure the speed of Curry's vehicle, and any conclusions that the deputies drew from the act of pacing did not, according to Curry, give them a valid reason to initiate the traffic stop.

{¶8}   "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  When a trial court considers a motion to suppress, it "assumes the role of trier of fact and is therefore in the best position to

resolve factual questions and evaluate the credibility of witnesses." *Id*. As a reviewing court, we must accept as true the trial court's factual findings if they are supported by competent, credible evidence, and we must "then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*.

**{¶9}** A traffic stop constitutes a seizure within the meaning of the Fourth Amendment to the U.S. Constitution, and any seizure must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). "'[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid.'" *State v. Bennett*, 2011-Ohio-4527, ¶ 22 (5th Dist.), quoting *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). "The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop 'as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hammen*, 2012-Ohio-3628. ¶ 26 (5th Dist.), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

**{¶10}** R.C. 4511.21(C) provides that "[i]t is prima-facie unlawful for any person to exceed any of the speed limitations" listed in the statute. Effectuating a traffic stop due to a speeding violation is constitutionally valid. *State v. Askew*, 2005-Ohio-3194, ¶ 23 (5th Dist.); *see also State v. Horn*, 2005-Ohio-2930, ¶ 18 (7th. Dist.) (the act of stopping a defendant is justified when the defendant is speeding).

**{¶11}** "Pacing" has been held to be an acceptable manner of determining a vehicle's speed. *State v. Lewis*, 2020-Ohio-4633, ¶ 36 (11th Dist.); *see also State v.*

*Vang*, 2019-Ohio-195, ¶ 11 (12th Dist.) (a police officer was able to determine a driver's speed by pacing that driver's vehicle with the officer's own patrol car); *State v. Pinnick*, 2022-Ohio-3471, ¶ 10 (9th Dist.) (use of police cruiser's speedometer to gauge a driver's speed was an acceptable way to measure vehicle speed); and *Hammen*, at ¶ 29 (5th Dist.) (upholding trial court's ruling that trooper had reasonable suspicion based on articulable facts to stop a driver's vehicle based on the trooper's pacing of that vehicle).

{¶12} Curry contends that R.C. 4511.091 prohibits law-enforcement officers from relying on their own unaided visual estimates of speed. Indeed, that statute provides that no person should be arrested, charged, or convicted under R.C. 4511.21 — the speeding statute — based on a law-enforcement officer's "unaided visual estimation of the speed of a motor vehicle." R.C. 4511.091(C)(1). The statute does not, however, preclude the use of "a stopwatch, radar, laser, or other electrical, mechanical, or digital device to determine the speed of a motor vehicle." R.C. 4511.091(C)(1)(a).

{¶13} In this case, the estimation of speed was not unaided. Rather, Deputy Picou paced Curry's vehicle using his own cruiser's speedometer. *See State v. Pullin*, 2020-Ohio-787, ¶ 17 (5th Dist.) (use of the speedometer in a cruiser — a mechanical device — is not unaided estimation of speed).

{¶14} Deputy Picou testified at the suppression hearing that learning how to properly pace a vehicle was part of the training that he received at a police academy before he was commissioned as a deputy. He testified that the Delaware County Sheriff's office uses pacing as a method for determining a vehicle's speed when that vehicle is traveling in front of a deputy's cruiser. At the time of this traffic stop, Deputy Picou was still receiving what he described at the suppression hearing as "field training" with the

Sheriff's office.  Deputy Picou was in the second phase of that training, which means that he was serving as a deputy but still had a training officer — Deputy Doudna — with him as he learned on the job.  Deputy Picou had completed his police-academy coursework in January 2023, and the traffic stop involving Curry occurred three months later.

**{¶15}**  Deputy Picou at the suppression hearing testified about pacing, explaining that no set distance must be maintained between a law-enforcement cruiser and a vehicle ahead of it, as long as the distance between those vehicles is not changing.  He agreed that the faster the lead vehicle is traveling, the further away the trailing vehicle may need to travel to maintain a safe stopping distance from it.  Both Deputy Picou and Deputy Doudna also testified that no set length of time for following a vehicle is essential when a deputy is pacing the lead vehicle.

**{¶16}**  Deputy Picou testified that he had to accelerate for "a couple" minutes to shorten the distance between the deputies' cruiser and Curry's vehicle after Picou turned onto State Route 656, and Picou said at the suppression hearing that the cruiser's speedometer indicated that he was traveling upwards of 94 mph at times during that two-minute acceleration process.  Deputy Picou also testified that he then paced Curry's vehicle for almost 20 seconds, and he explained that during that time he was "maintaining a constant speed, and the distance was not shortened."

**{¶17}**  Deputy Doudna in turn testified that during the time when Deputy Picou was pacing Curry's vehicle, the speedometer in the deputies' cruiser registered speeds of 83–85 mph for about 15 to 20 seconds.

**{¶18}**  The trial court's written ruling notes that video footage captured by a camera in the deputies' cruiser showed that Deputy Picou paced Curry at 85 mph for

approximately 12 seconds before Curry suddenly slowed his speed to 40–45 mph.  The trial court also found that it took the deputies almost three minutes, traveling at speeds of 80–94 miles per hour, to shorten the distance between the vehicles before the pacing period began.

**{¶19}** Curry contends that the cruiser's video contradicts Deputy Picou's testimony on the length of time that he paced Curry's vehicle.  Curry also contends that 12 seconds is an insufficient length of time to properly pace a vehicle.

**{¶20}** The trial court was entitled to consider the cruiser's video footage to determine whether it supported or contradicted the deputies' testimony.  In considering a motion to suppress, the trial court should "consider all the circumstances surrounding the stop and all evidence presented, including [the law enforcement officer's] testimony, in making its ruling."  *State v. Jarosz*, 2013-Ohio-5839, ¶ 19 (11th Dist.) (holding that a motion to suppress had been properly granted where a video recording contradicted a trooper's testimony and showed that the trooper had not maintained a consistent distance from the target vehicle while pacing it).

**{¶21}**  Our review of the record in this case, including the deputies' testimony and the cruiser video, indicates that the trial court's factual findings are supported by competent and credible evidence.  The deputies' testimony and the video footage from their cruiser support a finding that Deputy Picou maintained a consistent distance behind Curry's vehicle and that he did so for a long enough period for him to determine that Curry was traveling well above the posted speed limit of 55 mph.  *See Pinnick*, 2022-Ohio-3471, ¶ 12 (9th Dist.) (affirming a trial court's finding that video footage supported a trooper's testimony that he had maintained a steady distance behind another vehicle for enough

time to determine with his speedometer that the lead vehicle was traveling 10 mph faster than the posted speed limit). The trial court in our case found no significant inconsistencies between the deputies' testimony and the video footage, and we see nothing in the record that casts doubt on the trial court's findings.

{¶22} The trial court found that Curry committed a speeding offense. That finding is supported by the evidence, and we readily conclude that Curry's traffic violation gave the deputies reasonable suspicion to stop his vehicle. The trial court properly denied Curry's motion to suppress, and we now affirm the judgment in this case.

By: Gormley, J.

Baldwin, P.J. and

Popham, J. concur.