DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Talessia Martin, appeals from her conviction in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On November 26, 2007, Martin was traveling eastbound on Interstate 90 with two passengers in her car when Officer Charles Lavelle, in a marked police car, stopped her for a traffic violation. Upon entering Martin's license plate number into his mobile data terminal, Officer Lavelle was alerted to the fact that Martin had an outstanding warrant for her arrest issued in Medina. Officer Lavelle ordered Martin to the back of his police car while he confirmed the warrant with the Medina Police. Officer Lavelle began to inventory the contents of the car and prepare it for towing, when he found several bags of clothing containing Victoria's Secret and American Eagle Outfitters clothing in the back seat. Miscellaneous kitchen items were also found on the floor of the back seat and several empty department store bags were *Page 2 
stuffed up under the front seat. Officer Lavelle next opened the trunk, where he found several more bags of clothing, most of which still had the store tags on them, and some of which remained on hangers. Upon questioning, Martin stated that the clothes were hers, but she was unable to produce any receipts.
 {¶ 3} Officer Lavelle questioned Martin's passengers, Tiffany Wilson and Franklin Tindell, who stated they had just left the Midway Mall in Elyria. Police then contacted employees at the Victoria's Secret and American Eagle Outfitters in the Midway Mall and were told that the stores both confirmed that they had merchandise stolen that day. Martin, Wilson, and Franklin were all taken to the Avon Police Department. Wilson and Franklin provided a written statement to police and Martin was transferred to Medina where she was released to the Medina Police for her outstanding warrant.
 {¶ 4} On January 24, 2007, a grand jury indicted Martin on one count of receipt stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. The Lorain County Sheriff arrested Martin on February 5, 2007. On October 3, 2007, a bench trial commenced, at the conclusion of which Martin was found guilty. Martin was sentenced to 12 months in jail based on a presentence investigation, a $500 fine, and 3 years of discretionary post-release control. Martin now appeals her conviction.
 II Assignment of Error
"THE TRIAL COURT ERRED WHEN IT FOUND MS. MARTIN GUILTY OF RECEIVING STOLEN PROPERTY, AS THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE *Page 3 
PRESENTED AT TRIAL WAS LEGALLY INSUFFICIENT FOR A CONVICTION."[1]
 {¶ 5} In her sole assignment of error, Martin argues that there is insufficient evidence that the merchandise in her possession was stolen and that her conviction is against the weight of the evidence because she did not know or have reason to know that the merchandise was obtained by theft. She further avers that the State never proved that the merchandise found in her car was, in fact, stolen. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386. *Page 4 
 {¶ 7} In State v. Roberts, this Court explained that "[sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. Accordingly, we address Martin's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 9} The statute at issue requires that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A).
 {¶ 10} At trial, Officer Lavelle testified that when he stopped Martin and learned that she had an outstanding warrant, he approached the car and asked for her driver's license or *Page 5 
identification; Martin was unable to provide either. Because of the outstanding warrant, Officer Lavelle had to have the car towed and impounded, thus he was required to inventory the car's entire contents. During his inventory, he observed several large bags in her car and several kitchen items and bags shoved under Martin's seat. Officer Lavelle testified that he next opened her trunk, where he found "several more bags of clothing items that were stuffed in the bags that were in the trunk of the vehicle." Officer Lavelle described that the items "were still on hangers * * * [with] the original tags still on them and they were stuffed in bags and jammed pretty good in the trunk." Additionally, there were several empty department store bags in the trunk. Officer Lavelle testified that when he asked Martin if the items were all hers and she replied "yes." He testified that Martin said she "wasn't shopping, * * * [she] was at the Midway Mall in Elyria eating at the Red Robin and then she left and was on her way to * * * a babyGap store." Officer Lavelle then asked Martin to produce receipts for the merchandise and she told him she was unable to do so.
 {¶ 11} Next, Officer Lavelle testified that he separated passengers Tindell and Wilson and questioned them about what they had been doing prior to the traffic stop. Officer Lavelle asked both passengers to accompany him to the police station to provide written statements, and based on their comments to him, Officer Lavelle had police contact the Victoria's Secret and American Eagle Outfitters stores in the Midway Mall. Officer Lavelle testified that both stores informed the police that they had had merchandise stolen that day. Officer Lavelle testified that he then confiscated the items from those two stores before the car was towed. Later, he conducted an itemized inventory of all the bags in the car, which revealed 73 different undergarments from Victoria's Secret totaling $1,048 based on the ticketed price. Officer Lavelle testified that several items were the exact same style, but ranged in size from extra small *Page 6 
to extra large. His itemized inventory of the second bag included 13 items, at least 9 of which were inventoried as coming from American Eagle Outfitters and had a ticket price totaling $455.96. Officer Lavelle further testified that there were several kitchen items and a cutlery set jammed up underneath the driver's seat which were inventoried as having a combined ticketed price of $145.93. Officer Lavelle's itemized inventory of the vehicle's contents recorded a total ticketed value of $3,918.40 in goods and clothing from various merchants.
 {¶ 12} The day following Martin's stop, Officer Lavelle testified that he returned the confiscated clothing to Victoria's Secret and American Eagle Outfitters where the stores scanned each of the recovered items and provided him with a receipt valuing the merchandise. Officer Lavelle testified that he did not ask either merchant for an inventory list of the merchandise specific to their store to confirm that the merchandise came from that exact location, but he assumed that it did based on the store managers' previous statements. Additionally, Officer Lavelle had each store manager sign a "Receipt for [Recovered] Property" which specified the merchandise returned to their store that day.
 {¶ 13} Next, Rebecca Booker, the Midway Mall American Eagle Outfitters' store manager, testified about the merchandise Officer Lavelle returned to her store. Booker testified she scanned the recovered merchandise and produced a cash register receipt that totaled $358.50, before tax, but included any sale prices that were in effect the previous day. On cross examination, Booker admitted that she did not pull the store's inventory logs to ensure that the merchandise was originally located in her store, but that she did check the previous day's transactions from her store to determine if those items had been purchased, and they had not. Additionally, Booker testified she had not contacted police to report a theft in her store that day, *Page 7 
but when the police contacted her, she responded that her store did have merchandise stolen on that day.
 {¶ 14} The State then called Genevieve Malin, the Midway Mall Victoria's Secret Manager. Malin testified that the merchandise Officer Lavelle returned to her store was scanned and valued at $324.22, before taxes, but took into effect any sale prices for the previous day. Malin testified that her store had reported an incident of stolen merchandise to the Elyria Police the day before when Martin was stopped. Malin similarly admitted on cross examination that she did not pull her store's inventory logs to determine if the returned items were specifically from her store's inventory.
 {¶ 15} Detective Kevin Krugman also testified as to the detailed inventory he and Officer Lavelle conducted once the car was impounded. Detective Krugman testified to the photographs he took of the merchandise that was in Martin's vehicle, noting that there were "numerous items that were the same item in different sizes." He explained that the items were the "same color, same item, but different sizes, all the way from extra smalls to extra larges" and that there was "clothing in there for children, women, and men." Detective Krugman corroborated Officer Lavelle's testimony as to the multiple bags full of clothing, the multiple empty department store bags, and the various cutlery items found in Martin's vehicle.
 {¶ 16} Next, Tindell testified that on the day he was stopped with Martin, they had just left the Midway Mall where they had been shopping at Victoria's Secret. Tindell stated he left Martin in that store to go to "a shoe department" where he received a call from Martin stating she was in American Eagle and was ready to go because she had to pick up her children at a certain time. However, Tindell recalled that in the written statement he recorded that day, he reported that she called him and said "they was on her." Furthermore, on direct examination, Tindell *Page 8 
initially stated that Martin returned to the car without any bags, but after refreshing his memory with his written statement, Tindell testified that he saw Martin return to the car with a little bag of Chinese food from the food court, which she put in the trunk. Tindell testified that he felt that police had "rush[ed] him" and that when he was writing his statement, he "was nervous * * * [and] scared" by police. Tindell also testified that Martin had been keeping her clothes in her car because "somebody was breaking into her house * * * so she took her stuff out and put it in her car and it had been [there] * * * for like a week or two weeks before this even happened." He then testified that several of the clothes were "Christmas gifts."
 {¶ 17} The other passenger, Wilson, testified that they had just finished eating at Applebee's when they were stopped by Officer Lavelle. She stated that she had been shopping in Midway Mall at the Victoria's Secret for less than five minutes, but then left the store while Martin remained inside. Wilson then left the mall because she wanted to go sit in the car. Wilson further testified that Martin and Tindell returned to the car together and that Martin got directly into the car without any bags and did not place anything in the trunk.
 {¶ 18} Martin argues on appeal that there was insufficient evidence to prove the merchandise was ever stolen, and therefore, her conviction for receipt of stolen property is against the weight of the evidence. We disagree. Specifically, we point to the testimony from both Booker and Malin that merchandise was stolen from their stores on the same date Martin was found to have substantial amounts of clothing from those exact merchants in her car. Furthermore, both merchants accepted the merchandise back from police and signed a "Receipt for Property" which documented the merchandise as "recovered." Additionally, Booker checked the previous day's inventory to verify if it was, in fact, purchased from her store and it was not. *Page 9 
 {¶ 19} Our review of the record convinces us that either Martin or one of her passengers stole the merchandise found in her car on the day they were stopped. The only consistent testimony from Martin's passengers was that they had recently been at the Midway Mall in the same stores that police had confirmed had merchandise stolen that day. While we cannot speculate as to why Martin was not charged with theft in this case, we are confident that the record supports a finding that Martin knew or had reasonable cause to believe that the merchandise in her car was stolen. Moreover, Martin told police that the merchandise was hers and admitted she did not have receipts for any of it. We agree with other courts that have found that "[unexplained possession of property soon after it is stolen provides a sufficient basis for the trier of fact to infer guilty knowledge on the part of someone charged with receiving stolen property." State v. Hill, 4th Dist. No. 02CA11, 2002-Ohio-7368, at ¶ 11. We do not believe the trial court acted against the weight of the evidence when convicting Martin for receipt of stolen property given the contemporaneous nature of the stores' reported theft and the stop where Martin had merchandise she claimed as hers from those very stores, but was unable to proffer any corresponding receipts.
 {¶ 20} Additionally, the inconsistent and conflicting nature of the testimony from passengers Tindell and Wilson as to where they had just been, what they had done last, and what Martin had with her upon returning to her car, leads us to believe that "the trial court judge, did not lose his way in considering the evidence * * * [and] was in the best position to weigh the credibility of the witnesses before him." (Citations omitted.) State v. Peterson, 9th Dist. No. 23434,2007-Ohio-2091, at ¶ 19.
 {¶ 21} We find no evidence in the record to support a finding that Martin's conviction was against the weight of the evidence. Having disposed of her challenge to the weight of the *Page 10 
evidence, we similarly dispose of her sufficiency challenge. SeeRoberts, supra, at *2. Consequently, Martin's sole assignment of error is overruled.
 III {¶ 22} Martin's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
BETH WHITMORE FOR THE COURT
SLABY, J., CONCURS
[1] The State requests that this Court deny Martin's appeal because she combined her argument regarding the manifest weight of the evidence with her argument challenging the sufficiency of the evidence in a sole assignment of error. Because the language of App. R. 12(A)(2) is permissive and grants this Court discretion in this matter, we decline to deny Martin's appeal based on her failure to argue each assignment separately. Instead, we address her appeal on the merits.