**[Cite as *State v. Snowberger*, 2022-Ohio-279.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

STEVEN SNOWBERGER

    Appellant

C.A. No.     29853

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    20TRC01488

DECISION AND JOURNAL ENTRY

Dated: February 2, 2022

---

HENSAL, Presiding Judge.

{¶1}    Steven Snowberger appeals the denial of his motion to suppress and his conviction for operating under the influence of alcohol from the Stow Municipal Court. For the following reasons, this Court affirms.

I.

{¶2}    According to Officer Brent Barbe, he was on patrol one evening in Cuyahoga Falls when he thought he saw a car fail to make a complete stop at a stop sign. He followed behind the car and paced it as going over 50 miles per hour even though the speed limit for the road was 25 miles per hour. The car eventually turned into a gas station and parked. Officer Barbe pulled in behind the car and stopped its driver, Mr. Snowberger, as he was beginning to get out.

{¶3}    Officer Barbe testified that, when he approached the car, he could smell a strong odor of alcohol coming from Mr. Snowberger and that Mr. Snowberger's eyes were glassy and

bloodshot. As he spoke with Mr. Snowberger, Officer Barbe also noticed that Mr. Snowberger slurred some of his words. Officer Barbe asked Mr. Snowberger to take field sobriety tests, but Mr. Snowberger declined, explaining that his lawyer had informed him that the tests are rarely administered correctly. Based on the observations he had made of Mr. Snowberger, Officer Barbe arrested Mr. Snowberger for operating under the influence. At the police station, Mr. Snowberger also refused to take a breath-alcohol content test. A search of Mr. Barbe's car uncovered a small quantity of marijuana.

{¶4} Mr. Snowberger was charged with one count of operating a vehicle under the influence, one count of refusal to submit to a chemical test, one count of speeding, one count of failure to obey a traffic control device, and one count of possession of marijuana. Mr. Snowberger moved to suppress the evidence against him, arguing that Officer Barbe did not have reasonable suspicion to stop him or probable cause to arrest him. Following a hearing, the municipal court denied Mr. Snowberger's motion. A jury found Mr. Snowberger guilty of operating under the influence and the municipal court found him guilty of speeding. Mr. Snowberger has appealed, assigning three errors. This Court will address the second assignment of error first because it concerns the motion to suppress.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

{¶5} In his second assignment of error, Mr. Snowberger argues that the municipal court incorrectly denied his motion to suppress. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore

in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Accordingly, this Court grants deference to the municipal court's findings of fact but conducts a de novo review of whether the court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶6} Mr. Snowberger argues that Officer Barbe did not have reasonable suspicion to stop his vehicle. According to Mr. Snowberger, the officer did not actually observe him fail to stop properly at a stop sign and the officer could not make an unaided visual estimate of his speed.

{¶7} Although a police officer generally may not seize a person within the meaning of the Fourth Amendment unless the officer has probable cause to arrest him for a crime, "not all seizures of the person must be justified by probable cause * * *." *Florida v. Royer*, 460 U.S. 491, 498 (1983). For example, "[i]t is well-established that a police officer who observes a traffic violation possesses reasonable suspicion to conduct an investigatory stop." *State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 15. This includes stopping a vehicle for speeding. *See, e.g., State v. Hoder*, 9th Dist. Wayne No. 03CA0042, 2004-Ohio-3083, ¶ 15.

**{¶8}** According to Officer Barbe, he was travelling north on Oakwood Drive when he observed a car that was travelling westbound on Washington Drive make a continuous right turn to go north on Oakwood despite there being a stop sign at the intersection for traffic on Washington. He accelerated to catch up to the car but it continued to pull away from him, even though Officer Barbe was travelling over 50 miles per hour in a 25-mile-per-hour zone. The codified ordinances of the City of Cuyahoga Falls require drivers to stop at all stop signs and make it unlawful to exceed any speed limit.

**{¶9}** A close review of the dash cam video from Officer Barbe's police cruiser indicates that Mr. Snowberger was stopped at the intersection for several seconds and even let another vehicle pass by him before he pulled onto Oakwood Drive. There is nothing in the record, however, that contradicts the officer's testimony about Mr. Snowberger's excessive speed, and the municipal court found him credible. Contrary to Mr. Snowberger's assertion, Officer Barbe was not relying on only an unaided visual estimate of his speed but gauged it off the speedometer of his police cruiser. *See State v. Lewis*, 11th Dist. Ashtabula No. 2019-A-0077, 2020-Ohio-4633, ¶ 36 ("'Pacing' has been determined to be an acceptable manner for determining a vehicle's speed."). We, therefore, conclude that Officer Barbe had reasonable suspicion to stop Mr. Snowberger. We note that, when Officer Barbe asked Mr. Snowberger why he was travelling so fast, Mr. Snowberger said that he thought he was only going between 35 and 40 miles per hour because that is what his car's speedometer displayed. According to Officer Barbe, those speeds would still have been in excess of the 25-mile-per-hour posted speed limit for Oakwood Drive.

**{¶10}** Mr. Snowberger next argues that Officer Barbe did not have probable cause to arrest him. "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 9th

Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 28. "The legal standard for probable cause to arrest for OVI is whether 'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *State v. Krzemieniewski*, 9th Dist. Medina No. 15CA0015-M, 2016-Ohio-4991, ¶ 11, quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*. The "totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests." *Russo* at ¶ 10.

{¶11} Officer Barbe testified that Mr. Snowberger's speeding was an indicium of intoxication. He testified that, when he approached Mr. Snowberger, Mr. Snowberger was looking straight forward instead of at him. From his experience, people who are intoxicated do not look at you because they do not want to direct their breath at you. Nevertheless, Officer Barbe immediately detected the odor of an alcoholic beverage coming from Mr. Snowberger's vehicle, which was even more significant because it was extremely cold and the odor of alcohol is more difficult to detect under that condition. The officer continued to notice the odor of alcohol when Mr. Snowberger exited the vehicle. Officer Barbe testified that, as he spoke with Mr. Snowberger, he observed that Mr. Snowberger had glossy, watery eyes, which is another indicium of intoxication. He also observed that Mr. Snowberger had a slight slur to his speech, which is corroborated by the dash camera recording.

{¶12} Mr. Snowberger argues that the facts of his case resemble *State v. Finch*, 24 Ohio App.3d 38 (12th Dist. 1985). In *Finch*, the Twelfth District Court of Appeals determined that it was not a violation of the law for a driver to smell of alcohol, with bloodshot eyes, a flushed

face, or with slurred speech so long as the officer did not witness any impaired motor coordination. *Id*. at 40. We disagree with *Finch* because slurred speech by a driver is indicative that the driver's motor coordination is impaired. *See City of Great Falls v. McVay*, 455 P.3d 443, 2019 WL 3562061, ¶ 9 (Mont.2019) (citing testimony that alcohol impairs fine motor skills that can cause slurred speech). This Court has also determined that "[i]mpaired ability to operate a motor vehicle may be demonstrated through physiological factors such as the odor of alcohol, bloodshot eyes, and slurred speech[.]" *State v. Simms*, 9th Dist. Summit No. 23957, 2008-Ohio-4848, ¶ 6. Officer Barbe observed all those indicia in this case.

{¶13} Upon review of the record, we conclude that, under the particular facts of this case, Officer Barbe had sufficient information from which to believe that Mr. Snowberger was operating his car while intoxicated. Mr. Snowberger's second assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT SNOWBERGER'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29.

{¶14} In his first assignment of error, Mr. Snowberger argues that the municipal court should have granted his motion for judgment of acquittal. In the body of his brief, however, he also argues that his conviction for operating under the influence was against the manifest weight of the evidence. This Court has explained that sufficiency and manifest weight arguments should not be combined as one assignment of error. *State v. Vanest*, 9th Dist. Summit No. 28339, 2017-Ohio-5561, ¶ 33. Nevertheless, this court will exercise its discretion to address both arguments. *See State v. Martin*, 9th Dist. Lorain No. 08CA009356, 2008-Ohio-5816, ¶ 4, fn. 1.

{¶15}  Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29(A). Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶16}  On the other hand, when considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins* at 387.  An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶17}  Mr. Snowberger argues that Officer Barbe acknowledged at trial that speeding and rolling through a stop sign are not signs of impairment.  He argues that, although Officer Barbe observed that his eyes were red, that his speech was slurred, and that he had an odor of

alcohol, there were no chemical or field sobriety tests to support a finding that he was impaired. Mr. Snowberger also notes that his father-in-law testified that they had returned from a funeral in Michigan only thirty minutes before the stop and that his father-in-law had not observed him consume any alcohol or smelled any alcohol on his breath during the trip. Mr. Snowberger's father-in-law also testified that Mr. Snowberger is prescribed a medication that causes his speech to be slurred. According to Mr. Snowberger, even if he consumed alcohol after he arrived home, there was not enough time for it to impair his ability to operate a motor vehicle before the stop.

{¶18} Regarding the sufficiency of the evidence, the State is not required to prove "actual impaired driving", but only needs to show "an impaired driving ability." *State v. Wilson*, 9th Dist. Medina No. 12CA010263, 2014-Ohio-3182, ¶ 15, quoting *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19. "To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." *Id.*, quoting *State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5.

{¶19} According to Officer Barbe's trial testimony, some of the main indicia that a driver may be under the influence of alcohol that he was trained to look for are red, glassy eyes, an odor of alcohol, nervousness, and open containers in the vehicle. He testified that he suspected Mr. Snowberger was under the influence based on Mr. Snowberger's slurred speech, the very strong odor of alcoholic beverages, and Mr. Snowberger's driving. The intensity of the odor of alcohol continued even while he took Mr. Snowberger to the police station and allowed him to make a telephone call.

{¶20} On cross examination, Officer Barbe acknowledged that he did not observe Mr. Snowberger weaving or drifting while driving, did not see him drive across lane lines, and did

not see him strike any objects. He did not see Mr. Snowberger make any rapid speed changes, follow someone too closely, or have any problem stopping his car. He also did not see Mr. Snowberger going unusually slow or in the wrong lane of traffic, but he explained that Mr. Snowberger did fail to use an appropriate turn signal before pulling onto Oakwood Drive and before pulling into the gas station. Officer Barbe acknowledged that Mr. Snowberger did not fumble with his driver's license or registration when he retrieved them and did not sway or have balance problems, although the officer noted that he had instructed Mr. Snowberger to lean against his car during their conversation. Officer Barbe explained, however, that, for him to detect an odor of alcohol in cold conditions, it must be very potent because his nose gets stuffy. He noted that he can be heard clearing his nostrils multiple times during the video.

{¶21} Officer Keith Maltby testified that he arrived at the scene to assist Officer Barbe. He said that, as he approached Mr. Snowberger, he noticed that Mr. Snowberger had red watery eyes, which he said can be an indicator of impairment. He also noticed an odor of an alcoholic beverage on Mr. Snowberger's breath.

{¶22} We conclude that, viewing the evidence in a light most favorable to the State, it was sufficient to convict Mr. Snowberger of operating a vehicle while intoxicated. Although Officer Barbe observed Mr. Snowberger travelling at least twice as fast as the posted speed limit, Mr. Snowberger was unaware he was going that fast and he failed to use a turn signal when he pulled into the gas station *See State v. Baker*, 9th Dist. Summit No. 29167, 2020-Ohio-19, ¶ 14 (finding sufficient evidence to uphold conviction in part because defendant was travelling almost twice the posted speed limit, did not know he was going that fast, and failed to use turn signal). Mr. Snowberger also smelled strongly of the odor of alcohol and had red watery eyes. *See id.*; *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9 (explaining that the

odor of alcohol, glossy or bloodshot eyes, and slurred speech are among the physiological factors that demonstrate a person's physical and mental ability to drive was impaired).

{¶23} Regarding the weight of the evidence, we cannot overturn a conviction just because the jury chose to believe certain testimony. *Slone* at ¶ 15. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." *Id.*, quoting *State v. Gilliam*, 9th Dist. Lorain No. 97CA006757, 1998 WL 47085, *2 (Aug. 12, 1998). Upon review of the record, we conclude that the jury did not lose its way when it chose to believe the testimony of Officers Barbe and Maltby over the testimony of Mr. Snowberger's father-in-law and found that the State proved beyond a reasonable doubt that Mr. Snowberger operated a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Mr. Snowberger's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION

{¶24} In his third assignment of error, Mr. Snowberger argues that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, Mr. Snowberger must establish that: (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Snowberger must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶25} Mr. Snowberger argues that he was deprived of the right to effective counsel based on the closing argument that his counsel made. His counsel told the jury that, because it had had a long day of listening to testimony, she would make her comments brief. She argued that the State was "assuming that [Mr. Snowberger] is guilty of operating a vehicle under the influence, assuming to accept something is true without proof." She explained that the jury was not there to assume guilt and that its role was to determine whether the State had met its burden of proving every element of the offense beyond a reasonable doubt. She also explained that, if the jury had any doubt based on reason, it must vote not guilty. She then concluded by asking the jury to find Mr. Snowberger not guilty of the offenses. According to Mr. Snowberger, his counsel's closing argument was so brief that it was the same as not presenting an argument at all.

{¶26} In *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, the Ohio Supreme Court addressed whether an attorney's performance was deficient because his "closing argument was overly brief." *Id*. at ¶ 163. It rejected the argument "because counsel are afforded wide latitude during closing arguments. The length of a closing argument ordinarily involves questions of discretion and strategy. 'Debatable trial tactics generally do not constitute a deprivation of effective counsel.'" *Id*., quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 192.

{¶27} Mr. Snowberger's counsel explained on the record that she was intentionally choosing to keep her closing argument brief because she thought the jury might be weary after a full day of listening to the testimony and other evidence, characterizing her argument as "[s]hort and sweet." Regarding the substance of the closing argument, counsel reminded the jury that the State had the burden of proof and that Mr. Snowberger's guilt could not be assumed. She also asked for it to find Mr. Snowberger not guilty. Upon review of the record and consistent with *Grate*, we conclude that Mr. Snowberger's counsel's decision to make only a brief closing argument was within the ambit of debatable trial tactics. Consequently, Mr. Snowberger has not established that his counsel's performance was deficient. Mr. Snowberger's third assignment of error is overruled.

## III.

{¶28} Mr. Snowberger's assignments of error are overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JACOB T. WILL, Attorney at Law, for Appellant.

GREGORY M. WARD, Prosecuting Attorney, for Appellee.