[Cite as *State v. Gudino*, 2026-Ohio-641.]

STATE OF OHIO      )         IN THE COURT OF APPEALS
                )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                      C.A. No.      31353

     Appellee

     v.                                   APPEAL FROM JUDGMENT
                                                  ENTERED IN THE
ELIAS GUDINO                     COURT OF COMMON PLEAS
                                                   COUNTY OF SUMMIT, OHIO
     Appellant                       CASE No.     CR-2023-04-1126

DECISION AND JOURNAL ENTRY

Dated: February 25, 2026

HENSAL, Judge.

{¶1} Elias Gudino appeals his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On the morning of March 10, 2023, Copley police officers responded to a call reporting a suspicious man outside a house on Collier Road. The officers discovered a man who was hungry, cold, and wet and learned that he spoke limited English. The officers attempted to communicate with the man using Google Translate. As a result, the officers believed the man had been kicked out of a car by intoxicated acquaintances and left on Collier Road. They transported the man to Haven of Rest.

{¶3} Later the same morning, Akron police officers responded to a report of two bodies near the side of Cordova Avenue in a heavily wooded area in Akron. They discovered the bodies of two men. Blue duct tape was wrapped around their heads to seal their mouths, and their hands

were bound behind their backs with blue rope. The bodies were cold to the touch. At 8:53 a.m., Copley Police received a second call. This call reported the body of a deceased man in a ditch on Wright Road. Once there, Copley police found a body in the same condition as the bodies found on Cordova Avenue. All three victims were Hispanic men who appeared to have been shot in the head execution style, and all three had "MS-13" written on their chests.

{¶4} Once the three bodies had been discovered, Copley police identified the man who had been found alive earlier in the morning as a potential fourth victim. They retrieved him from Haven of Rest, and he was interviewed by a Homeland Security agent, who suspected that there were signs of cartel involvement in the shootings. The man, who police identified as O.M.-G., told them that he had been kidnapped and taken from a house in the Youngstown area to a house in the Copley-Akron area. The agent and two Copley detectives drove O.M.-G. around the area in an attempt to locate the house where he had been taken the night before. After the attempt proved unsuccessful, they stopped at a gas station. While the detectives were inside the station and the agent pumped gas, O.M-G. became visibly agitated and appeared to crouch down below the dashboard of the vehicle in an attempt to hide. Through a translator, the agent learned that O.M.-G. was saying, "It's him. It is him." Upon further inquiry, O.M.-G. explained that he saw "the man that killed [D.C.-R.] . . . . walking inside the gas station."

{¶5} The Copley officers confronted Mr. Gudino, who was the person identified by O.M.-G. He agreed to be interviewed at the Copley police department, and the officers searched Mr. Gudino's vehicle with his consent. In the compartment of the driver's side door, they found a receipt for the purchase of blue diamond-braid rope from Home Depot dated the previous day. During his interview, Mr. Gudino maintained that he bought the rope for use in connection with his business. When confronted about O.M.-G.'s identification of him, Mr. Gudino's story evolved.

At first, he maintained that he had driven to Youngstown of his own volition to visit a candle store, where he befriended a stranger who ultimately forced him to drive to Copley and tie up four kidnapping victims at gunpoint before the man shot them.

{¶6} Later, Mr. Gudino admitted that story was a lie, and his story changed again. At that point, he told the detectives that a man came to his house on March 8, 2023, and led him to a dental office where a man named "Caso" instructed him to pick up a truck for a "job" in Youngstown. Mr. Gudino told the detectives that he believed it was related to a lost shipment of cocaine that he trafficked in 2009. He said he believed that it was related to the cartel, and he explained that he did not contact police because he feared for the lives of his children and grandchildren.

{¶7} Mr. Gudino was charged with three counts of aggravated murder and one count of attempted aggravated murder under Revised Code Section 2903.01(A), three counts of aggravated murder and one count of attempted aggravated murder in the course of committing kidnapping under Section 2903.01(B), three counts of murder and one count of attempted murder in the course of committing kidnapping under Section 2903.02(B), four counts of kidnapping, one count of having a weapon while under disability, one count of tampering with evidence, and numerous firearm specifications. With respect to the aggravated murder, murder, and kidnapping charges, the State prosecuted Mr. Gudino as the principal offender or, in the alternative, as an actor complicit in the crimes. During the trial, Mr. Gudino maintained that he was not the principal offender and that he acted under duress. The trial court instructed the jury that "[d]uress is not a defense to aggravated murder" with respect to the charges arising under Sections 2903.01(A) and 2903.01(B) but instructed the jury about duress with respect to felony murder and kidnapping.

{¶8}  The jury found Mr. Gudino guilty of all the charges and specifications.  The trial court merged each of the aggravated murder convictions under Section 2903.01(B), the murder convictions under Section 2903.02(B), and the kidnapping convictions into the corresponding aggravated murder convictions under Section 2903.01(A).  The trial court sentenced Mr. Gudino to a stated prison term of twenty-three years to life with all of his individual sentences to run concurrently.  Mr. Gudino appealed, assigning two errors for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT DID NOT GIVE A REQUESTED DURESS JURY INSTRUCTION WITH RESPECT TO THE AGGRAVATED MURDER COUNTS AGAINST MR. GUDINO.

{¶9}  In his first assignment of error, Mr. Gudino maintains that the trial court erred by failing to instruct the jury about the affirmative defense of duress in connection with the charges of aggravated murder under Section 2903.01(A) and Section 2903.01(B).  This Court does not agree.

{¶10}  "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus; R.C. 2945.11 ("In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict.").  Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 2015-Ohio-492, ¶ 46, citing *State v. Griffin*, 2014-Ohio-4767, ¶ 5 and *State v. Lessin*, 67 Ohio St.3d 487, 493 (1993).  This Court reviews a trial court's decision to provide a

requested jury instruction for an abuse of discretion. *State v. Ross*, 2023-Ohio-1185, ¶ 50 (9th Dist.), quoting *State v. Sanders*, 2009-Ohio-5537, ¶ 45 (9th Dist.).

{¶11} Duress is an affirmative defense in Ohio. *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). As such, "the burden of proof, by a preponderance of the evidence . . . is upon the accused." R.C. 2901.05(A). The affirmative defense of duress "is strictly and extremely limited in application and will probably be effective in very rare occasions." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). An "essential feature" of duress is "the sense of present, imminent, immediate and impending death, or serious bodily injury." *Id*. at 487. In other words, an "imminent, immediate danger or threat of danger" must prevent the individual "from exercising his own will," leaving no alterative path of action. *Id*. at 483 fn. 2. As a result, "the actor is forced to choose between the lesser of two evils." *Id*. To establish the presence of duress, a defendant must prove five elements:

> (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*State v. Flinders*, 2012-Ohio-2882, ¶ 30 (9th Dist.), quoting *State v. Lawson*, 2008-Ohio-1311, ¶ 20 (2d Dist.).

{¶12} The Supreme Court of Ohio has recognized that although "[t]he defense of duress has long been recognized as a defense to all crimes[,]" the common-law exception "is taking the life of an innocent person." *State v. Getsy*, 84 Ohio St.3d 180, 197-198 (1998). In *Getsy*, the Supreme Court clarified that duress is not an affirmative defense to aggravated murder. With respect to aggravated murder committed with prior calculation and design, the Court held that

"[d]uress cannot be asserted as a defense to aggravated murder under R.C. 2903.01(A)." *Getsy* at syllabus.

{¶13} In that case, the defendant was also charged with aggravated felony murder under Section 2903.01(B). *See State v. Getsy*, 1999 WL 1073682, *1 (11th Dist. Oct. 22, 1999). The defendant was convicted of aggravated murder under both Section 2903.01(A) and (B), and the State elected to proceed to the penalty phase on the charge alleging prior calculation and design. *Getsy*, 84 Ohio St.3d at 198. This rendered the question of duress in connection with the felony-murder charge moot. *Id.* Nonetheless, the Supreme Court observed that in that context, duress does not operate as an affirmative defense, noting that "if duress is a valid defense to the underlying felony in a felony-murder trial, a defendant can be convicted of murder, but not of aggravated murder." *Id*. at 198, citing *State v. Woods*, 48 Ohio St.2d 127, 135 (1976), *vacated on other grounds sub nom. Woods v. Ohio*, 438 U.S. 910 (1978).

{¶14} Like the defendant in *Getsy*, Mr. Gudino was charged with aggravated murder under Section 2903.01(A) and Section 2903.01(B). The indictment also charged him with the lesser-included offense of felony murder under Section 2903.02(B). The State prosecuted Mr. Gudino under the alternative theories that he was the principal offender or, if not, that he was complicit in the crimes. The jury found him guilty of each offense, and the State elected for Mr. Gudino to be sentenced for aggravated murder with prior calculation and design.

{¶15} Duress is not an affirmative defense to the charges of aggravated murder with prior calculation and design under Section 2903.01(A). *See Getsy* at syllabus. Consequently, the trial court's jury instruction that omitted duress as an affirmative defense was "a correct, pertinent statement of the law that [was] appropriate to the facts." *White*, 2015-Ohio-492, ¶ 46 (9th Dist.). The jury found Mr. Gudino guilty of aggravated murder with prior calculation and design, and the

State of Ohio elected to proceed to sentencing on those counts. As in *Getsy*, the question of whether Mr. Gudino was entitled to a duress instruction with respect to aggravated murder under Section 2903.01(B) is moot. *Id*. at 198.

{¶16} The trial court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of duress with respect to the charges of aggravated murder. Mr. Gudino's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. GUDINO DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶17} Mr. Gudino's second assignment of error is that he received ineffective assistance of trial counsel because trial counsel did not meaningfully cross-examine the Homeland Security agent, filed to seek a curative instruction regarding the testimony of Mr. Gudino's estranged wife, and failed to object to "an improper and inflammatory remark made by the prosecutor in closing." This Court does not agree.

{¶18} In order to demonstrate ineffective assistance of counsel, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Debatable trial strategy, for example, does not constitute ineffective assistance of counsel. *State v. Snowberger*, 2022-Ohio-279, ¶ 26 (9th Dist.). "There are countless ways to provide

effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* at 689.

{¶19} Mr. Gudino's first argument is that trial counsel failed to conduct a meaningful cross-examination of the Homeland Security agent. Specifically, Mr. Gudino argues that trial counsel "failed to meaningfully confront [the agent] over his refusal to answer critical defense questions." During the agent's direct examination, he testified that a fellow member of the Ohio Northeast Smuggling Enforcement Team contacted him. He testified that the circumstances of the homicides led him to conclude that they were possible assassinations by an international cartel: each was killed by a single gunshot to the head, the victims were bound and gagged, and "MS-13" was written on their chests. The agent testified that he was present when O.M.-G. identified Mr. Gudino at the gas station, and he explained that he was present when police executed a search warrant at Mr. Gudino's house. According to the agent's testimony, he investigated whether any of the victims had associations with organized crime and, as of the date of his testimony, he had found none. He also testified that he had found no association between a fifth intended victim, A.M.-T., and organized crime.

{¶20} During cross-exam, the agent declined to testify about some specific details of his investigation, including whether the investigation included bank records, how long the investigation lasted and whether it was ongoing, and the specific facts that led to his conclusion that A.M.-T. was not targeted for cartel-related activity. Contrary to Mr. Gudino's position, however, trial counsel did not fail to "probe[] or challenge[] [the agent's] purported inability to answer the defense's questions." Trial counsel cross-examined the agent at length and with vigor, frequently drawing attention to points at which the agent declined to provide further information. The decision to cross-examine a witness – and the scope of any cross-examination undertaken – is

a matter of trial strategy that falls within the professional judgment of counsel. *See State v. Grate*, 2020-Ohio-5584, ¶ 148-149; *State v. Grether*, 2019-Ohio-4243, ¶ 20 (9th Dist.). This Court cannot conclude that trial counsel's decisions with respect to the agent's cross-examination in this case fall outside "the wide range of reasonable professional assistance . . . ." *Strickland* at 689.

{¶21} Mr. Gudino's second argument is that he received ineffective assistance because trial counsel did not request a limiting instruction with respect to the testimony of his estranged wife, C.R.C. He maintains that despite the fact that the trial court sustained an objection to testimony regarding prior bad acts on Mr. Gudino's part, counsel did not request a curative instruction to prevent the jury from considering the import of C.R.C.'s answer.

{¶22} During C.R.C.'s direct examination, she testified that she filed a complaint for divorce in 2021 but later dismissed it because Mr. Gudino "said . . . he was going to harm my children." Trial counsel objected to her statement, and the trial court sustained the objection. C.R.C. repeated the statement once more without objection, and she made no other similar statements during her testimony. Trial counsel did not request a curative instruction, but he cross-examined C.R.C. thoroughly, focusing, in part, on whether she maintained ties to Mr. Gudino after they separated. The decision to request a curative instruction is a matter of trial strategy that falls within the professional judgment of counsel. *State v. Conway*, 2006-Ohio-2815, ¶ 111. "Counsel may very well determine that a . . . curative instruction would draw more unwanted attention to the incident." *State v. Godoy*, 2019-Ohio-4625, ¶ 20 (9th Dist.), citing *State v. Moreland*, 2016-Ohio-7588, ¶ 74 (9th Dist.). This Court cannot conclude that trial counsel's decisions with respect to C.R.C.'s testimony fall outside "the wide range of reasonable professional assistance . . . ." *Strickland* at 689.

{¶23}  Mr. Gudino's final argument is that trial counsel provided ineffective assistance by failing to object to prosecutorial misconduct during closing arguments.  Specifically, Mr. Gudino argues that a reference to his past conduct as a drug trafficker served no purpose but to inflame the jury because it had no bearing on his guilt in this case.  He maintains that failure to object fell below a standard of objective reasonableness.

{¶24}  During closing, the State commented on Mr. Gudino's prior association with the cartel, which included drug trafficking:

> He needed three things to carry this out:  The duct tape, the rope, and a gun.
>
> He's never messed with a gun before.
>
> Oh, wait a minute.  He was in the cartel.  Yeah.
>
> He was pushing massive quantities of that poison into our towns.
>
> Because with the cartel, as they said, it's all about the money.
>
> Which brings me to another difficult point.  If it truly is all about the money, going on his statement, why would the cartel come to him now . . . and they want him to pay back for 8 kilos.  And the payback is to assist in homicides?

Although Mr. Gudino correctly notes that he was not charged with a drug offense in this case, the fact of his prior federal conviction for drug trafficking had been discussed throughout the proceedings.  It was, as the State noted, the foundation of Mr. Gudino's duress defense: he maintained that as a result of losing eight kilograms of cocaine when he was trafficking for the cartel, the cartel exerted pressure on him to participate in the murders with which he was charged.  The State's remarks, while tinged with emotion, were fair comment on the evidence that had been introduced by the State and by Mr. Gudino in the course of the trial.  "While a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities, the prosecutor is entitled to some latitude in making a closing argument to the jury.  'Realism compels us to

recognize that criminal trials cannot be squeezed dry of all feeling.'" *State v. Tibbetts*, 92 Ohio St.3d 146, 168 (2001), quoting *State v. Keenan*, 66 Ohio St.3d 402, 409 (1993).

{¶25} Even if the State's comments were improper, however, a reasonable attorney may choose not to interrupt his opponent's closing argument with objections. *State v. Myers*, 2002-Ohio-6658, ¶ 154. "Objections can 'disrupt the flow of a trial' and "are considered technical and bothersome by the fact-finder.'" *Id*., quoting *State v. Campbell*, 69 Ohio St.3d 38, 53 (1993). This Court cannot conclude that trial counsel's decision not to interrupt closing argument was objectively unreasonable. *See Strickland* at 689.

{¶26} Mr. Gudino also argues that even if none of the instances of alleged ineffectiveness standing alone demonstrates that he was prejudiced, this Court should conclude that their cumulative effect warrants a new trial. Because this Court has concluded that none of the instances to which Mr. Gudino directs our attention demonstrate that counsel's performance fell below an objective standard of reasonableness, however, he cannot demonstrate ineffective assistance based on their cumulative effect. "Each assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together." *State v. Graham*, 2020-Ohio-6700, ¶ 170. Mr. Gudino's second assignment of error is overruled.

III.

{¶27} Mr. Gudino's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

RUSSELL PATTERSON and CRAIG JAQUITH, Assistant Public Defenders, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.